IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION


DORA C. GULLEDGE, as Administratrix of
the Estate of LUANNA CAMPBELL, DECEASED                               PLAINTIFF

V.                                                                    NO. 3:07CV008-M-A

TRINITY MISSION HEALTH & REHAB OF
HOLLY SPRINGS, LLC and JOHN DOES 1-20                                 DEFENDANTS


### MEMORANDUM OPINION

This cause comes before the Court upon the Defendants' motion to compel arbitration [7].

### I. MOTION TO COMPEL ARBITRATION

Congress provided in the Federal Arbitration Act (hereinafter "FAA") that a written agreement to arbitrate in a contract involving interstate commerce "shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In addition, the FAA expresses a strong federal policy in favor of arbitration, and any doubts concerning the scope of arbitration issues should be resolved in favor of arbitration. *Southland Corp. v. Keating,* 465 U.S. 1, 10 (1983); *Mouton v. Metropolitan Life Ins. Co.,* 147 F.3d 453, 456 (5th Cir.1998).

There is a two-step inquiry to determine whether a party should be compelled to arbitrate. *Washington Mut. Fin. v. Bailey*, 364 F.3d 260, 263 (5th Cir. 2004). A court must determine if (1) the parties agreed to arbitrate the dispute; and, (2) "any federal statute or policy renders the claims nonarbitrable." *Id.*

## A. VALIDITY OF THE AGREEMENT TO ARBITRATE

In determining if the parties agreed to arbitrate a court must make two determinations, whether (1) there is a valid agreement to arbitrate; and, (2) the dispute in question falls within the scope of that agreement. *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003). The Plaintiff makes no contention and the Court finds no basis to find, that the dispute falls outside the scope of the arbitration agreement. The first determination is thus dispositive in this action.

### 1. AGREEMENT TO ARBITRATE

Normally, principles of state contract law govern the question of whether the parties formed a valid agreement to arbitrate. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995); *Bailey*, 364 F.3d at 264.

In the present case the Plaintiff contends that there is no valid agreement to arbitrate because: (1) Lizzie Bowens lacked the authority to bind Luanna Campbell to arbitration; (2) the circumstances in which Campbell signed the agreement are dubious; and, (3) the arbitration agreement is procedurally unconscionable.

#### a. A SURROGATE'S POWER TO MAKE HEALTH-CARE DECISIONS

Upon Campbell's admission to the nursing home, it is undisputed that Bowens, her daughter, signed a number of agreements including an agreement to arbitrate. Bowens claims that she had no authority to bind her mother to this contract. Section 41-41-211 of the Mississippi Code governs a surrogate's power to make health-care decisions for a patient. The section provides:

> (1) A surrogate may make a health-care decision for a patient who is an adult or

emancipated minor if the patient has been determined by the primary physician to lack capacity and no agent or guardian has been appointed or the agent or guardian is not reasonably available.

(2) An adult or emancipated minor may designate any individual to act as surrogate by personally informing the supervising health-care provider. In the absence of a designation, or if the designee is not reasonably available, any member of the following classes of the patient's family who is reasonably available, in descending order or priority, may act as surrogate:
(a) The spouse, unless legally separated; (b) An adult child; (c) A parent; or (d) An adult brother or sister.

(7) A health-care decision made by a surrogate for a patient is effective without judicial approval.

MISS. CODE ANN. § 41-41-211.

The Mississippi Supreme Court has interpreted this statute broadly. In *Covenant Health Rehab of Picayune, L.P. v. Brown*, that Court dealt with an analogous factual scenario. 949 So.2d 732 (Miss. 2007). In that case, the Court determined that even though no diagnosis by Brown's physician made before admission to the nursing home showed that she lacked capacity to make her own decisions, the individual acting as Brown's surrogate could bind her to an arbitration agreement. *Id.* at 736-37. The Court reasoned that an admission by Brown's estate that she was incapable of managing her affairs coupled with a later corroborating diagnosis put Brown within the class contemplated by the statute. *Id.* Mississippi courts have since interpreted this case to mean that a finding of incapacity by either an admitting or primary physician is enough to trigger surrogate decision making. *See Trinity Mission of Clinton, LLC v. Barber*, 2007 WL 2421720, *4 (Miss. Ct. App. August 28, 2007).

In the present case the Plaintiff does not make an express admission that Campbell was

incompetent at the time of her admission to the nursing home.[1] The Plaintiff does, however, challenge Campbell's capacity to enter into an agreement on her own. They admit that Campbell was illiterate, blind in one eye, and suffering from serious medical problems. It is undisputed that Bowen signed a "DNR" form for Campbell stating that "Campbell is unable to voice [an] opinion related to [her] mental status." These admissions, while illustrative of Campbell's capacity to make her own decisions, are not controlling in and of themselves.

Campbell's medical records, however, present a strong case that she was unable to make her own health-care decisions. The Plaintiff admits the Defendants' records show that Campbell was "unable to recall her date of birth, [the] current season, nor the three words that was [sic] given to her (pen, mill, apple), nor the fact that she is in the [nursing] facility." Additionally, upon her November 13, 2004 admission to Baptist Memorial Hospital Desoto, Dr. Tapan K. Thakur found Campbell to be "confused." This same report listed "[d]epression with dementia" in her medical history. When referring Campbell to the nursing facility, Dr. Thakur listed her primary admitting diagnosis as "[a]dvanced dementia; deconditioning psychosis." That same form lists Campbell's behaviors as confused, disoriented, and hostile. These facts establish that Campbell could not make her own health-care decisions and falls within the class contemplated by the statute. Since Bowen falls within the class of relatives who may subsequently act as a surrogate, her decisions and actions have become binding upon Campbell's estate. MISS. CODE ANN. § 41-41-211 (2)(a).

Because Bowen was able to bind Campbell to the arbitration agreement, there is no need

---

[1] In line with *Barber*, this Court does not interpret *Brown* as requiring an express admission of incapacity by a party. This rule would create a "magic words" doctrine allowing individuals seeking to avoid enforcement of health-care agreements to do so by simply not admitting their own subjective beliefs. It would be the rare case in which an opposing party would be able to offer evidence to rebut this failure to admit.

to review the circumstances under which Campbell may or may not have signed the agreement.

### b. PROCEDURAL UNCONSCIONABILITY WITHIN THE AGREEMENT

The Plaintiff next contends that the agreement was procedurally unconscionable.[2] Procedural unconscionability looks beyond the substantive terms which specifically define a contract and focuses on the circumstances surrounding a contract's formation. *Vicksburg Partners, L.P. v. Stephens*, 911 So.2d 507, 517 (Miss. 2005) (internal citations omitted). The Mississippi Supreme Court has found two considerations for procedural unconscionability: (1) lack of voluntariness; or (2) lack of knowledge. *Id*. (quoting *Entergy Miss., Inc. v. Burdette Gin, Co.*, 726 So.2d 1202, 1207 (Miss. 1998)).

In the present case the Plaintiff claims that Bowens did not voluntarily enter into the agreement because Bowens was under the belief that she had to sign in order for her mother to be admitted to the nursing facility. The Court has no doubt that this assertion of Bowen's belief is true. Bowens was most certainly presented with a contract of adhesion which she signed in order to gain admission for her mother into the facility. However, this alone is not enough to make the agreement voidable. The contract of adhesion would only become procedurally unconscionable where "the stronger party's terms are unnegotiable and 'the weaker party is prevented by market factors, timing or other pressures from being able to contract with another party on more favorable terms or to refrain from contracting at all.'" *Stephens*, 911 So. 2d at 518 (quoting *Burdette Gin*, 726 So.2d at 1207 (internal citations omitted)).

*Stephens* dealt with an analogous situation. In that case the Mississippi Supreme Court

---

[2]The Plaintiff does not raise the issue of substantive unconscionability. This issue is not squarely before the Court. However, on its face any agreement to cap damages at $50,000 or to entirely eliminate the possibility of punitive damages would be substantively unconscionable. *See, e.g., Stephens*, 911 So.2d 507 (striking similar provisions of an agreement). This fact appears to be conceded by the Defendants. The Court, however, does not reach that issue as the severability clause would allow the remainder of the agreement to stand even if those portions were found unconscionable. This is an issue that is properly within the purview of the arbitrator.

found the disputed agreement to be enforceable because the arbitration provision was easily found within the six-page contract, was in language understandable to the parties, and no exigency was shown. *Id.* at 521. The same is true here. The agreement in question deals solely with arbitration. The agreement is only seven pages long and is clearly titled "ALTERNATIVE DISPUTE RESOLUTION AGREEMENT." The agreement is written in plain terms and defines all terms of art that are used. Additionally, the agreement warns the parties to read and carefully consider its contents as well as warning them of the consequences of entering the agreement. The Plaintiff offers no evidence to show any exigency forced the agreement. In fact, the agreement itself has an escape clause if a party later desired to rescind the agreement and move to a different facility. The record thus supports the conclusion that Bowens voluntarily entered into the agreement. The Plaintiff does not raise the issue of whether Bowens knew she was entering into the agreement. However, that claim would fail on the merits as the record indicates Bowens was aware of the terms of the agreement. The agreement is not procedurally unconscionable and is thus not voidable on these grounds.

### B. ARBITRATION AGREEMENT PREVENTED BY STATUTE OR POLICY

The second determination that a court must make is whether any statute or policy prevents arbitration of the dispute. The Plaintiff puts forth two theories, that (1) the arbitration agreement constitutes illegal consideration; and, (2) it is in violation of both federal and state public policy.

#### 1. ARBITRATION AGREEMENTS AS ILLEGAL CONSIDERATION

The Plaintiff contends that the arbitration agreement constitutes illegal consideration in violation of 42 U.S.C. § 1396r(c)(5)(A)(iii). The statute states in relevant part that where an individual is entitled to medical assistance through Medicare or Medicaid, a nursing facility must

> not charge, solicit, accept, or receive, in addition to any amount otherwise required to be paid under the State plan . . . any gift, money donation, or other consideration as a precondition of admitting . . . the individual to the facility or as a requirement for the individual's continued stay in the facility.

42 U.S.C. § 1396r(c)(5)(A)(iii); *see also* 42 C.F.R. § 483.12(d)(3).

This is a novel argument in Mississippi and the Fifth Circuit. Though it has been raised before other courts. The Indiana Court of Appeals dealt with this issue in *Sanford v. Castleton Health Care Center, LLC*, a well reasoned though not binding opinion. 813 N.E.2d 411 (Ind. Ct. App. 2004). Employing the doctrine of *ejusdem generis,* the Court found that "other consideration" contemplated only items that were similar to the terms "gift, money or donation." *Id.* at 419. They specifically found that "requiring a nursing home admittee to sign an arbitration agreement is not akin to charging an additional fee or other consideration as a prerequisite of admittance." *Id.* This was supported by the reasoning that "an arbitration agreement merely establishes a forum for future disputes; [that] both parties [were] bound to it and [that] both parties receive whatever benefits and detriments accompany the arbitral forum." *Id.* Accordingly, the Indiana Court did not find the arbitration clause to be in violation of the statute. *Id.* This decision is in accord with decisions made by the Alabama Supreme Court and the Tennessee Court of Appeals and seems eminently sound to this Court. *Owens v. Coosa Valley Health Care, Inc.*, 890 So.2d 983 (Ala. 2004); *Owens v. National Health Corp.*, 2006 WL 1865009 (Tenn. Ct. App. June 30, 2006).

Not fazed by the logic pronounced by Indiana, Alabama, and Tennessee, the Plaintiff argues that Mississippi case law holds that extinguishing one's right to bring suit is consideration. *See Estate of Lexie Louis Sadler v. Lee*, 98 So.2d 863 (Miss. 1957). However, this rule does not apply in the present case. First logic dictates, the proper interpretation of

Section 1396r is that it refers only to types of consideration that are similar to gifts or money donations. An arbitration agreement is not financial consideration and thus not contemplated by the statute. The Mississippi cases dealing with extinguishing the right to sue, deal with the total loss of any ability to adjudicate claims. This factual scenario is not before this Court. Here the parties have simply chosen another forum in which to bring their grievances. The arbitration agreement is not in violation of Section 1396r.

### 2. ARBITRATION AGREEMENTS AS VIOLATIONS OF PUBLIC POLICY

Finally the Plaintiff asserts that this arbitration agreement should be void as a matter of public policy. This argument is put forth under two separate theories: (1) that both Mississippi and federal law require nursing facilities to protect the rights of their patients and this agreement infringes on the right of a patient to sue; and, (2) that contracts of adhesion should not be enforceable in the healthcare setting, especially as they relate to the elderly or infirm.

The Plaintiffs are correct in asserting that both federal and state law require nursing homes to protect the rights of their patients and to encourage the full exercise of those rights. 42 C.F.R. § 483.10(a)(1); Miss Dept. of Health, *Rules, Regulations and Minimum Standards of Institutions for the Aged or Infirm*, Rules 404.3(b), 408.2. As discussed in the previous section, an arbitration agreement does not violate any right that a party may have. The agreement simply puts in writing the parties agreement to adjudicate their claims in a different forum. Certainly both parties have a right to a fair and impartial arbitration. However, an agreement to move to a different forum is not a violation of a party's right to recover damages or obtain other relief as may be warranted.

The Plaintiff next puts forth the theory that adhesion contracts should not be enforceable in instances such as the one before the Court. Adhesion contracts are agreements "drafted

unilaterally by the dominant party and then presented on a 'take-it-or-leave-it' basis to the weaker party who has no real opportunity to bargain about its terms." *East Ford, Inc. v. Taylor*, 826 So.2d 709, 716 (Miss. 2002). No matter the merit of any such argument, the law is clear. There is a strong presumption in favor of arbitration. Additionally, Mississippi has adopted the majority rule, as discussed previously, that adhesion contracts are enforceable unless they are also unconscionable. Any change in this posture would have to come from the Mississippi legislature or Supreme Court. The arbitration agreement in the case before the Court is not in violation of public policy.

### C. PLAINTIFF'S DEMAND FOR LIMITED DISCOVERY AND A JURY TRIAL

The Plaintiff has requested limited discovery and a jury trial in order to determine if a binding arbitration agreement exists. Under the FAA, a party may sometimes be entitled to such. In making that determination, The Fifth Circuit has held

> a party to an arbitration agreement cannot obtain a jury trial, merely by demanding one; to be entitled to a jury trial, the party must at least make some showing that, under prevailing law, he would be relieved of his contractual obligation to arbitrate if his allegations proved to be true, and he must produce at least some evidence to substantiate his factual allegations.

*Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 961 F.2d 1148, 1154 (5th Cir. 1992).

In the present case the Plaintiff asserts no facts she might be able to, or even hope to, discover which would support her claim. None of the bases, under which her response to the Defendants' motion was brought, would appear to be bolstered by allowing for a period of discovery. As is, the Defendants are entitled to judgment as a matter of law on all issues raised. Thus a jury trial would be unwarranted.

### II. CONCLUSION

The Court finds that a valid agreement to arbitrate exists. The claims brought by the

Plaintiff fall within that agreement and no reason exists why these claims are not arbitrable. Further there is no reason to allow for limited discovery or a jury trial. The Defendants' motion to compel arbitration is GRANTED and this case is CLOSED.

It is so ordered.

On this the 22nd day of October, 2007.

                                            **/s/ Michael P. Mills**
                                            **CHIEF JUDGE**
                                            **UNITED STATES DISTRICT COURT**
                                            **NORTHERN DISTRICT OF MISSISSIPPI**